```
                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF OHIO
                      WESTERN DIVISION


ERIC D. WHITE,                    :
                                  :  NO. 1:12-CV-00633
        Plaintiff,                :
                                  :
   v.                             :
                                  :  OPINION & ORDER
DUKE ENERGY KENTUCKY, INC.,       :
                                  :
        Defendant.                :
                                  :
                                  :
```

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 16), Plaintiff's Response (doc. 19), and Defendant's Reply (doc. 28). For the reasons indicated herein, the Court GRANTS Defendant's motion.

**I. BACKGROUND**

Plaintiff Eric White ("White") worked for Defendant Duke Energy for over twenty-one years, rising to a management position in early 2007 (doc. 19). White is an African-American, and the only African American in a management position at Defendant's East Bend Station power-generating facility (Id.).

On November 23, 2011, White observed two employees, Duane Doyle ("Doyle") and Daryl Duty ("Duty"), engaging in a heated argument and White intervened to break them up (Id.). It was the end of White's shift, at 4:00 P.M. the day before the Thanksgiving holiday (doc. 16). White collected his things to go, and while leaving, Duty stopped White, asking White to ensure that Doyle would not damage Duty's car in the parking lot (Id.). In the parking lot, White asked Doyle about the argument, and Doyle

informed White that immediately before the yelling match, Duty had pushed Doyle down, and that Doyle was hurt in the process (Id.). White returned to the building to tell Duty nothing had happened to Duty's car, and to ask Duty for his version of the altercation (Id.). Duty said Doyle had kicked a garbage can at him and then the two started wrestling (Id.). White observed that Duty's pants were torn and he saw what he thought was a scratch where the tear was (Id.). White proceeded to leave for the Thanksgiving holiday and reported back to work the following Tuesday, November 29, 2011 (Id.).

After he returned to work, White heard people at the plant talking about the fight between Duty and Doyle, and he also had heard the fight had been reported and was being investigated (Id.). Doyle approached White and requested White talk to Duty, to see if they could simply put their problems behind them (Id.). Doyle also indicated his side was hurting from the fight (Id.). White, as requested by Doyle, approached Duty to explain what Doyle had said (Id.).

Just over a week later, White was called into a meeting with the committee of people conducting the investigation into the altercation (Id.). The committee was comprised of Teresa Taylor, Human Resources Specialist; George Dilz, White's supervisor; and Billy Hyland, the Maintenance Supervisor (Id.). During the interview, the committee asked White "did you see or did you have any information pertaining to the physical confrontation between

Daryl Duty and Duane Doyle on Wednesday, November 23, 2011?" White responded:

> I was going to the refrigerator to get food and heard yelling. Walked out and saw Daryl and Duane about four feet apart yelling at each other. I heard f-bombs and I heard Duane tell Daryl that he would kick his fat ass and Daryl said come on. I said break it up. Duane grabbed his lunch box and walked away. Daryl Duty left also into the ICE break room. Mark House headed into the maintenance break room.

(Id.). The committee also asked White "what action did you take concerning this event, if any?" (Id.) White responded that he said "break it up!" and that he was ready to go downstairs if needed (Id.). The committee further asked if White knew anything else about the altercation and White responded in the negative (Id.).

Later that day, Plaintiff indicates he stopped one of the committee members, Mr. Hyland, and told Hyland he had additional information (Id.). Hyland responded that the committee was already planning to call White in for a second meeting (Id.). During the second meeting, White stated the altercation was physical and that Doyle claimed to have been injured (Id.).

After the committee completed interviews it concluded that by failing to report the fight, by not sharing that Doyle reported being hurt, and by not sharing completely what he had been told during the first interview, White had violated company safety policy, harassment policy, and the code of business ethics (Id.). The committee recommended that White's employment be terminated (Id.). White was informed of the decision and his last day was

December 16, 2011 (Id.).  Following his termination, White appealed his discharge through Defendant's recourse process, but his termination was affirmed (Id.).  Defendant replaced White with Greg Bouras, a Caucasion (doc. 19).  White then filed a charge with the Equal Employment Opportunity Commission alleging race discrimination, which issued a right to sue letter (doc. 16). Plaintiff filed his Complaint for federal and state law racial discrimination on August 21, 2012 (doc. 1).  Defendant filed the instant motion for summary judgment (doc. 16), to which Plaintiff responded (doc. 19), and Defendant replied (doc. 28) such that this matter is ripe for the Court's review.

**II. STANDARD**

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an

"alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of his claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted

-6-

evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

### III. DISCUSSION

#### A. Applicable Law

Discrimination on the basis of race is contrary to both state and federal law. 42 U.S.C. § 2000e et seq., K.R.S. §§ 344.040(1)(a) and 344.450. Under these provisions, Plaintiff may assert a prima facie case through the presentation of either direct or indirect evidence. In many cases, evidence of direct discrimination can be difficult to produce, so the law allows for a plaintiff to raise an inference of discrimination through circumstantial evidence. McDonnell Douglas v. Green, 411 U.S. 792 (1973). In the case at hand, Plaintiff does not proffer direct

-7-

evidence of race discrimination. Thus, the Court will focus upon circumstantial evidence in evaluating Plaintiff's prima facie case.

In order to prevail on a circumstantial evidence theory here, Plaintiff must establish a prima facie case of race discrimination by proving that (1) he was African-American, (2) he was qualified, (3) he suffered an adverse employment action, and (4) he was treated differently than a similarly-situated younger employee, or he was replaced by someone outside of the protected class. McDonnell Douglas, 411 U.S. 792, Clayton v. Meijer, 281 F.3d 605, 610 (6th Cir. 2002). The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978). Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. Texas Dep't. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

After Plaintiff establishes a prima facie case, the burden shifts to Defendant, to rebut the presumption of discrimination by producing evidence that someone else was preferred, for a legitimate, nondiscriminatory reason. Texas Dep't. Of Community Affairs, 450 U.S. at 254.

It is sufficient if Defendant's evidence raises a genuine issue of fact as to whether it discriminated against the Plaintiff. Texas Dep't. Of Community Affairs, 450 U.S. at 254. To accomplish

-8-

this, Defendant must clearly set forth, through the introduction of admissible evidence, the reasons for Plaintiff's termination. <u>Id</u>. at 255. The explanation provided must be legally sufficient to justify a judgment for the Defendant. <u>Id</u>. If Defendant carries this burden of production, the presumption raised by the <u>prima facie</u> case is rebutted, and the factual inquiry proceeds to a new level of specificity. <u>Id</u>. Placing this burden of production on the Defendant thus serves simultaneously to meet Plaintiff's <u>prima facie</u> case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that Plaintiff will have a full and fair opportunity to demonstrate pretext. <u>Id</u>. at 255-56. Plaintiff can do so if he can show that the proffered reason had no basis in fact, 2) the proffered reason did not actually motivate the adverse action, or 3) such reason was insufficient to motivate the adverse action. <u>Manzer v. Diamond Shamrock Chemicals, Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).

**B. The Parties' Briefing**

Defendant contends in its motion that Plaintiff can neither establish a <u>prima facie</u> case nor rebut its proffered reason for Plaintiff's termination: his failure as a management employee to report a fight (doc. 16). Defendant contends Plaintiff cannot establish a <u>prima facie</u> case, as in its view there were no similarly-situated management employees who failed to report a fight (<u>Id</u>.). After Plaintiff replied with a number of employees that he claimed were indeed similarly-situated and treated

-9-

differently (doc. 19), Defendant critiqued such employees as not similarly-situated (doc. 28).

The Court finds no question that Plaintiff has established his prima facie case. In the Sixth Circuit "showing that similarly-situated employees were treated more favorably than plaintiff is not a requirement but rather an alternative to satisfying the fourth element of the prima facie case- a plaintiff may satisfy the fourth element by showing either that the plaintiff was replaced by a person outside of the protected class or that similarly-situated non-protected employees were treated more favorably than the plaintiff." Clayton v. Meijer, 281 F.3d 605, 610 (6th Cir. 2002)(quoting Talley v. Bravo Pitino Rest. Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995)(overruled in part on other grounds as stated in Long v. Hartwood Transit, Inc., 2012 U.S. Dist. LEXIS 174744 (S.D. Ohio Dec. 10, 2012); also citing Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001), Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000); see also Gulley v. County of Oakland, 496 Fed. Appx. 603, 607 (6th Cir. 2012), Thomas v. The Union Institute, 98 Fed. Appx. 462, 466 (6th Cir. 2004). Here Plaintiff has established he was a member of the protected class, that he was qualified for his position, and that he suffered an adverse employment action, termination. Plaintiff has further satisfied the fourth prong of his prima facie case by proffering evidence that he was replaced by Greg Bouras, an employee outside the protected class.

As the Court has determined that Plaintiff established his prima facie case, the burden shifts to Defendant to proffer a legitimate non-discriminatory reason for its termination decision. Here, Defendant contends Plaintiff failed in his management capacity to report a fight, in violation of a number of company rules. The burden then shifts back to Plaintiff to show that such proffered reason, failing to report a fight, is pretext for unlawful discrimination. Plaintiff can do so by demonstrating "1) that the proffered reason had no basis in fact, 2) that the proffered reason did not actually motivate his discharge; or 3) that it was insufficient to motivate discharge." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). Because after a review of the record the Court concludes no reasonable jury could find pretext in Defendant's proffered reason, Plaintiff's failure to report the fight, Defendants are entitled to summary judgment on Plaintiff's claims for racial discrimination.

There is no dispute as to the fact that Plaintiff knew that Doyle and Duty engaged in a physical altercation, that he knew Doyle thought Doyle had been hurt, and that Plaintiff witnessed evidence that Duty's pants were ripped and Plaintiff thought he saw a scratch. There is further no dispute that Plaintiff was not entirely forthcoming about what he knew from the start.

Clearly the proffered reason had a basis in fact, as under Manzer there is no question that "the proffered bases for the plaintiff's discharge...happened." 29 F.3d 1078, 1084. The Court

finds inadequate record evidence to support the theory that race more likely motivated the discharge as opposed Plaintiff's lack of reporting the fight. Id. Finally, the analysis of whether the lack of reporting the fight was sufficient to motivate the discharge "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially similar conduct." Id. Here, Plaintiff has proffered no evidence of other management employees who were not fired but who failed to report a fight.

Although it seems harsh for a more-than-twenty-year employee, who broke up a fight right before a Thanksgiving holiday to be terminated for failure to report the details of such fight, the Court cannot second-guess Defendant's "honest belief" that based on the information before it, Plaintiff had violated its Safety Policy, its Harassment Policy, and its Code of Business Ethics. Blizzard v. Marion Technical College, 698 F.3d 275, 286 (6th Cir. 2012). Clearly Defendant's committee conducted an investigation including a number of interviews, and ultimately recommended the termination of both Plaintiff and Duty, a Caucasion. Plaintiff was not the only person who suffered as a result of the unfortunate pre-Thanksgiving altercation between Duty and Doyle. The Court's conclusion is bolstered by Plaintiff's own briefing, in which he acknowledges he deleted an email from Doyle about keeping the incident quiet, without reading it, in an effort "to stay out of things" (doc. 19). Plaintiff was a manager, and his role in enforcing workplace rules was key. Public policy and

law support the rights of employers to enforce workplace rules and ensure employee safety.  <u>See</u>, <u>e.g.</u>, <u>NLRB v. Mead Corp.</u>, 73 F.3d 74 (6th Cir. 1996).

**IV. CONCLUSION**

Having reviewed this matter, the Court concludes that Defendant's Motion for Summary Judgment is well-taken.  Although Plaintiff has established a <u>prima facie</u> case for racial discrimination, the Court concludes he has not rebutted Defendant's proffered reason, that he failed to report a fight, by showing such reason pretextual.  The Court does not find that a reasonable jury could conclude Plaintiff was a victim of racial discrimination here, when there is no dispute that Plaintiff was not entirely forthcoming about what he knew from the start.  The Court does not like the termination of such a long-term employee who broke up a fight, but is compelled to enforce Defendant's "honest belief" that its termination of Plaintiff, after an investigation, was simply that Plaintiff did not fully report his knowledge about the fight.  Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment (doc. 16), and DISMISSES this matter from the docket.

SO ORDERED.


Dated: February 19, 2014        s/S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge